The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Good afternoon, counsel. We'll call case number 4-23-0308, Denise Mrozek v. Walmart, Inc. Would counsel for the appellant please state your name for the record? Good afternoon. This is Brad Skafish on behalf of the appellant, Denise Mrozek. Thank you, counsel. And counsel for the appellate, could you please state your name for the record? Good afternoon. David Maxey on behalf of the appellate, Walmart. Thank you, counsel. Mr. Skafish, you may proceed. Thank you. As the panel knows, this is a personal injury matter where the plaintiff's pant leg caught on the corner of an end cap display at a Walmart, which was sitting a few inches above the ground, which then caused her to lose her balance and fall. She has produced evidence that there are other floor-level end cap displays with rounded corners, yet the one in question had more of a jagged angle. We would argue there are two possible conclusions for this difference. One, they had intentionally used a different type of end cap, which we feel is inappropriate for the was intended to be rounded like the ones on the other end cap displays. The trial court in this case granted summary judgment, finding that the condition that caused the incident was open and obvious. We have appealed, arguing that the court erred in the determination that the condition was open and obvious. And secondarily, that even if it was open and obvious, this is a case where the defendant should reasonably anticipate the harm, which would mitigate against the open and obvious finding. Standard review of the granting of summary judgment is de novo. As we pointed out, the plaintiff photographed other end cap displays. Bless you. The one in question did not have the rounded corner. It had kind of a jagged angular ending. And the pictures, which are in the record at C-130 to 134, show scuffs, dents, and scratches in just the area where her pant leg caught, showing that there's an indication that this has been come into contact with by shoes, carts, and other items on numerous occasions before the day in question. The evidence also established through the testimony of the employees of Walmart that this was the way this end cap is constructed. It's that way since the time they put it in. There are multiple other end caps similar to that around the store, and there were at least three different types of end caps, possibly more, and that there were several or an unknown number of end caps exactly like this one. That was the testimony, thank you, of Walmart's employee Amy Bednar, which is in the record. And I think that, interestingly, that actually supports the plaintiff's position rather than Walmart's. Ms. Bednar could not come up with a reason why that particular end cap had been used at that location as opposed to one of the others. And I think that leads us again to a couple of conclusions. That they had different designs, and for no reason in particular, they went with this one when their own store had a safer design that was more appropriate for... Did you have somebody testify that there's a safer design or that the store has some obligation to put particular end caps in particular locations? No, there was no expert testimony, if that's what the panel's asking. Did you have anybody other than the plaintiff to testify that it was somehow broken or jagged? Well, the layout of the end cap display was acknowledged by the defendant's own witnesses. It's that the jagged... They never acknowledged that it was either broken or jagged. In fact... Well, I think that the jaggedness is... Hang on. They would correct counsel when they referenced it being broken by saying that it's not broken, it's made that way. That was their consistent testimony. Okay. That it was made that way. I think as to the term jagged, and that's my own description of it, the pictures are in the record. The Walmart witnesses acknowledged that was the condition of the end cap display. The jaggedness... Did you include the black and white or the color photos? I believe what is included in the record appears to me to be only black and white. Okay. Because those are the only ones you submitted. Right. I think they're clear enough that we're not relying on anything color-based, and I think that the panel can get an idea of what this looked like and what was put into evidence at the trial court level. Were your pictures taken in color? The originals, I believe, were taken by a cell phone, so they would have been in color, yes. So why would you submit black and white? I don't know at what point they got transferred to black and white and why that's what ended up in the record. I don't... To give a candid answer, I'm not sure if there was a reason for that or if that was an oversight. Okay. So again, I think the panel is free and the jury would be free to either accept Ms. Bednar's testimony that, yes, this is exactly how it was designed, or to find that that doesn't seem plausible in the face of the other photographs showing different designs at different locations. But taking the testimony at face value, I think you can still apply that to the evidence and find that that is an inappropriate display for that particular location. It might be perfectly fine many other places in the store, but at that place, it doesn't catch the eye while people are expected to be looking at merchandise and other displays in other areas, and it's at floor level. That's why we've cited to certain cases that normally the nature of whether something is or is not open and obvious is a legal decision for the court to make. However, citing to the Bukaklian case, I hope I'm saying that right, where there's a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual. And in that case, the plaintiff tripped on a black floor mat leading to a shower area, and part of the mat was allegedly sticking up higher. The court at the trial level found it to be open and obvious, and granted summary judgment, the appellate court reversed, finding there is a question of fact as to open and obvious, because the evidence may show that it was not easy to spot for that plaintiff given the lack of color contracts and the short time to discover. We, in our case, have a plaintiff who doesn't have this at eye level, has it rather at ankle level, is looking at the display items that are there for purchase and would only have a short time to come into contact with it before the tripping incident could happen. Counsel, I have a question. Is my understanding correct that the two Walmart employees who were at the store and the area where this incident occurred, understood correctly both before, during, and after the incident when your client fell? They testified that they saw a video. I think they acknowledged in the second of those depositions we took that what they were looking at may not have been the actual incident, and the testimony regarding interpretation of supposedly seeing this incident was not any part of the trial court's ruling as to open and obvious. Well, I'm a little curious that whatever they were looking at is not part of the record that the trial court before us, is it? It's not, because, and that would be something if the appellee or the defense at the lower level wanted to rely on it, that's something they might've wanted to put before. It is grainy and far away, and I think of no use as to proving or disproving the issues that were argued in the summary judgment motion that this was an open and obvious situation. You certainly couldn't see the end cap. You have seen the video? Yes, I've seen the video. You can't see the condition that we allege caused the fall whatsoever in the video. See her fall in the video? You see what appears to be a person falling from a far away vantage point. What you can't see is what caused the fall or the actual condition that caused the fall. According to the employee, she didn't fall. She stumbled perhaps, but never went down to her knees. Well, that we would dispute 100% and that alone would be a factual issue. I think the fact that that was not relied upon by the defense in bringing their summary judgment motion kind of speaks volumes as to whether that's a viable argument. I'm one of my last points. I just want to make sure we emphasize the fact that this was not a trip over this end cap corner. It was the pant leg catching on it, which then caused her to stumble and fall, which I think is a little bit different because anybody could appreciate a tripping hazard more easily than they can appreciate something that as they walk by it doing their shopping might catch on their leg. She testified she was wearing like tights, legging type thing. Right. Yeah. Skin tight. Tight to the body. I think she didn't hang like jeans. But then as they rubbed up against it, they caught. She also testified it didn't tear the fabric of her leggings. Right. It didn't scratch her leg. Right. That was her testimony. Yes. Okay. So there was no actual evidence on the pants themselves that she had even scraped the end cap. Correct? Well, it was her unrefuted testimony that the end cap caught her. I understand that. I'm saying when asked about the specific physical condition of her leg or her pants, there was no indication that they were snagged, torn, pulled or scraped. That was her testimony on that issue. That's correct. A second reason, aside from the visibility that summary judgment should be denied as to the open and obvious issue, is that here it's not just the premises liability type negligence that's alleged. There's active or ordinary negligence. The open and obvious doctrine is generally seen to be as a defense only to premises liability. And in this case, the plaintiff has alleged, and I think based on what we've already discussed, the facts support more the argument that this was perhaps not a defective condition because something was in a broken condition, but a deliberate decision by Walmart to use this type of end cap. If Walmart created the condition, then that qualifies as active negligence as opposed to simply failing to fix or repair when something was left in a condition that it didn't start in. And that's, again, what Bednar and the other employees said, that this is exactly how we designed it. Well, if that's the case, that is a reason that the summary judgment on the issue of open and obvious would not be appropriate because there is, in fact, active negligence alleged. You referred to Justice Steigman's case of Pate in talking about what active negligence was, correct? I think that's the case. Yes. Okay. And in fact, in that case, it wasn't the hose that created the negligence. It was the movement of the hose, thereby active negligence. Correct. Okay. So there's nothing here involving the end cap. The end cap's just sitting there. It's been there since they built it. I think the active nature... I don't take active in that context to mean active as in dynamic movement at the time, rather that active in the sense that the defendant themselves created the dangerous condition as opposed to maintained a dangerous condition on their property by failing to correct some other situation that occurred. That's not what Pate stands for, but that's the case you cite for active negligence. Well, I think that while the facts are not exactly identical to the Pate case, I do think that that is still a takeaway from that case. And even if we hadn't cited that, I think there are other cases that stand for the same proposition. We cited the Reed versus Walmart case, another case where Walmart is the defendant. And in that case, the customer stepped on a rusty nail protruding from a board in an outdoor garden area. The appellate court found that because the complaint alleged that Walmart caused that condition, in addition to alleging that Walmart allowed that condition to exist on its premises, that would be an allegation of both ordinary negligence and premises liability. And it was enough to overcome the open and obvious argument. It's reference active negligence in that. So that's not what that case stands for either. I would argue that it's the same point of law, that it's characterized differently in terms of the terminology, but that essentially that they are making the same argument that is applicable to our case. OK, great. That's OK. The court also should have denied summary judgment, even in a finding that there was open and obvious under these circumstances, because Walmart should have anticipated the harm. We cited to the diver case, which involved an individual who fell leaving a portable bathroom on a tire rut. He prevailed at the trial level, the defense appealed, and the appellate court at that level found that even though the argument of open and obvious might have made some sense because the tire rut itself, if you just focus on that, was pretty obvious. Given that it had rained, the ground was slippery, the plaintiff had to step down six to eight inches, and that he had to look around to make sure construction materials were not being thrown off a balcony, which was an ongoing activity, that there was an exception because the land possessor should have anticipated the harm. Their quote in Diver, which I think is instructive, is conditions may exist which those seemingly innocuous enough in themselves indeed present an unreasonable danger under certain circumstances. And again, I think that's what we have here. If somebody just looked down at the unmoving NCAP display, I can understand how they would make the argument. There's nothing inherently sinister or dangerous about that. But under the circumstances of a person actually doing their shopping, to expect that they would see it under all circumstances and avoid it so that it doesn't cause a tripping hazard to them, it doesn't take into account the human factors that are going on at the time of the actual incident. And I do want to address one of the arguments made by the appellate in the response. They say, well, that might be true if she were distracted, but she herself in her deposition said she wasn't distracted. And they cite to the record, when your pant leg caught on the corner and you trip, were you distracted by anything? Answer, no. That's a great and lawyerly question. That's the way those of us in this profession may ask a question of the deposition. But I think it's far too vague to hold that against her in that context, because as a of distraction would include things like loud noises, flashing lights, having your mind elsewhere. If you look on the very same page in the same testimony, she's asked, do you remember where you were looking right before your trip? Answer, I was looking down the aisle to see if they had my dry cat food. So while she may not have used the word that the defense lawyer used in terms of distraction, she just described right there a distraction and not only any distraction, the type of distraction that a retail store like Walmart wants you to have. They're they're selling product. They want you to be keeping your eyes around to all the things that may attract you to spend money at their store. And I'm sure my time is running close. I just want to touch on one of the arguments that the defendant also made their argument that summary judgment could be affirmed on alternative grounds. They argued that she failed to establish any defect. Again, I think the important fact here is you don't need to accept the theory that this was in a broken condition. If you accept the theory that this was in an inappropriate condition, which may have been on purpose by Walmart, but which was inappropriate for this particular location. And again, I would point if you look at even without a question, I'm trying to understand what the problem was, was the sun. Was it jagged? Was it broken? Was it inappropriate? In what sense? How? And don't you have to establish that? I think, again, looking at the record, page 130, you can see the corner of it. You can you don't need to play a guessing game to think how this could catch somebody's pant leg and looking at the picture and taking the testimony of the plaintiff that it did catch her pant leg. There is evidence of of the jagged, the angular shape of it compared to the ones that we see on page 131, where there is a bar that that fills in the gap or page 132, where there's a circular piece that fills in that same gap. Well, so let me ask it this way. In questioning your client, you use the term jagged, but she never responded. It was jagged. She claimed it was broken. I think that was her interpretation. But in what way is it broken? Well, her interpretation is it's broken because if you compare the pictures on page 130 and 132, one of them has a smooth, rounded corner that fits in the exact same gap that exists on the one on 130 that's left open. Now, Walmart says that's by design. It may or may not be, I think. How does it, even if there are two different ways of putting on end caps, how does that make this one broken? Again, broken as opposed to different. It's sufficient basis to establish liability. Because different, if different is a tripping or falling hazard, is not sufficient under the law. If by design, Walmart put in trip lines around their stores and just hope people didn't see them, that wouldn't be acceptable just because it was done by design. We don't have to establish that something was broken as opposed to the way it was intended if we can establish that it was unreasonably safe and foreseeable that somebody would fall on it, which is the case here. Again, I think looking at the pictures, which I urge the panel— Somehow this end cap was defective other than your inference? I think the plaintiff's testimony, the pictures, and especially the fact in the pictures that there are numerous dents and scuffs and marks. It's been hit over and over and over again. It's clearly— By what? Wouldn't that be, wouldn't the scuffs and marks be maybe a shopping cart? I think— And if that were true, what does that mean? That it's clearly not visible enough for a shopper using the area who— Wasn't she pushing a shopping cart at the time? She was. The shopping cart was to the side and to the left of the corner that her pant leg caught on. Anyway, your time is up, Mr. Scafiesburg. We'll have an opportunity on rebuttal. Thank you. Thank you very much. Mr. Maxey. You're on mute, sir. You're on mute now. Still muted. You're still on mute. There you go. Okay, sorry about that. Like I said, I'm new to this, your honors. I'm glad you didn't hear me before because I said you guys. I mean your honors. I'm new to this technology. Please, the court. David Maxey on behalf of Walmart. I think with the questions that you justices were asking plaintiff, I think it's very clear here. The plaintiff deduced no evidence of a defect here. We have different descriptions of what it was. Jagged. The pictures are clear. It's just an end cap shelf. The bottom shelf is there. There are scuffs on it. Obviously, grocery could hit an end cap shelf. They're in all the Walmarts. They're in all the retail stores. There's no evidence here that this particular end cap was defective. And it's clear that it was open and obvious as she's coming around the corner. Those end caps are there. They're very open and obvious. And that's my first point. The second point is the active versus not active negligence. Clearly, this is not active negligence. Because it's a condition on the land. This end cap has been there since the beginning. There's no evidence that it's been altered. There's no evidence that it was manipulated. The end cap is there. It has products displayed. Active negligence is the pate case. That's clearly where the boy wrenches the hose out of the person's hand and causes the accident. That's active negligence. This is a premises liability case. The plaintiff pleaded as a premises liability case. It's a condition on the land. There's no active negligence here. The open and obvious doctrine applies. The third argument the plaintiff made was that there was a distraction exception. There is no distraction. If she's in her own mind thinking of what she wants, that's not a distraction. That's what the case law says. What happened here is she came around the corner, was reaching for cat food and tripped off on the corner of the shelf. I mean, that happens. People do trip. It doesn't mean that this end cap display was defective or that she was distracted. She even admits she didn't have anything in her hands. She admits she wasn't distracted and that she was going to pick up cat food and she tripped. But Mr. Maxey, Mr. Skafer says that that was just lawyerly talk to ask her such a direct question as were you distracted and get a response? No, she didn't really mean that. Well, her testimony is obvious. There's other cases where that's one of the questions that are asked in these cases that we've cited in our brief. Were you distracted? Was there anything there? So, for example, in Ward, the guy is coming out of the store. Just right outside the store, there's a five foot pile on there and he's carrying a box and he can't see. And yes, he runs into it. He's distracted by the box in his hand. There's nothing here. She had nothing in her hands. She was just walking to get the cat food, tripped over the corner of the shelf. So, yes. And she says she wasn't distracted. It wasn't a lawyerly question. It's just you asked a person, was there anything distracted? You know, she was going to go get cat food. That was it. I mean, everybody does that. And when you're in the store, that would create an unlimited liability because you're always thinking with when you're in the store, especially if a shopping list, but you can't be the store can't be responsible if you inadvertently aren't looking at the looking and you trip over a cap display. I mean, they're all over the store. This cap display is no different than any of the others. And you can look at the pictures for yourselves. It's clear. It's just a typical cap display. And as just as the arm and stated earlier, asked the plaintiff earlier, they had several different styles. It's several different styles. This was one of the styles of caps. And then finally, our alternative argument is that there is no defect here. I mean, even if even if you say, well, for some reason, find it wasn't open and obvious. The shelf itself is not defective. Kind of goes back to open and obvious. There was no defect in the shelf. And on those grounds, I rest unless there's questions from the panel. Mr. Maxey, before we even get to open and obvious, there would first have to be a duty on your part, correct? Correct. In order for you to have a duty, there would have to be a condition that would be sufficiently significant to impose or create the duty in the first place. Correct? Correct. If the condition we're talking about here, and I would suggest condition is actually a term of art, not just a descriptor. If the condition is simply that it's an end cap, like many other end caps in the store, some like it, some not like it, it's not constructed in any particular way differently than any of the others that are similar to it in the store. What's the condition that creates your duty? Well, the condition here that created the duty, the condition is that end cap display that's a fixture in the store. But the end cap display was not defective. I mean, if it's not broken, if it's not jagged, if it hasn't been misdesigned, if it isn't misplaced, then what's your duty? We do not have a duty in that situation. All right. Anything else, Mr. Maxey? I mean, the duty is just duty of ordinary care, but that end cap passes muster under the duty of ordinary care. That's the end. All right. Thank you. Mr. Scafish, rebuttal. You're on mute. I'm sorry. Sorry about that. Didn't want to make any noise during counsel's argument. As counsel just stated at the end, I mean, there is a duty of ordinary care that would be applicable at all times. And one of the cases that he brought up, I'm glad he did because I think I failed to mention in my argument, the Ward versus Kmart case. There's simply these posts outside the door of the Kmart. And the court found that whether the fact, whether in fact the condition itself served as adequate notice of its presence or whether other additional precautions were required to satisfy the defendant's duty was a question properly left for the jury. I think that's a poll that sticks up far higher than ankle height and is directly in front of the store that the customer also would have had to walk past just to go into the same store is far more of a self-serving obvious condition than the end cap that while counsel argues it's just like any other one, it's not like the other ones at the store. There may have been other ones like this, but there were certainly other ones in the area that were very much unlike this one that couldn't have done what this one did to this particular plaintiff. So I think the argument that it would create unlimited liability, that that didn't stop the appellate court in the Ward versus Kmart case because you don't expect that everybody's going to fall on every condition. There have to be additional factors. And here are the additional factors where this particular end cap just isn't appropriate to serve as an ankle level one when there is merchandise all around the plaintiff that would be eye-catching and keep somebody from appreciating its existence in the short amount of time that they have to avoid rubbing their leg up against it. Do you have anybody testify to that fact? As to which? This is not an appropriate end cap for this type of display or this location in a store. Again, if you're asking about whether there was expert testimony, there was not. But there was the plaintiff's testimony as to what happened. There is photographs of other end caps that are used in similar locations that were acknowledged. Well, is it even, I need to correct you. Did anybody say in similar locations or just throughout the store? Yes, the plaintiff took the pictures and testified that these were at other end caps right next to in the adjacent aisles to the ones where her incident happened. She took pictures of the ones right in the immediate vicinity around where her incident happened because she wanted to compare the one that she fell on to the other locations. They all had this curved rounded ending that couldn't have caught a pant leg in the fashion that hers did. So I don't want to belabor the issues we've argued and I appreciate that points he wanted to make and I appreciate the panel's time. Unless you have any further questions for me, I'll turn over my time. I see none. Thank you, Counselor. We appreciate your argument. The court will take this matter under advisement. The court stands in recess.